IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      )
                              )
                              )
v.                            )  CRIMINAL ACTION NO. 1:06-33 (GBL)
                              )
RONALD E. FERGUSON,           )
ROBERT D. GRAHAM,             )
CHRISTIAN M. MILTON, and      )
ELIZABETH A. MONRAD           )
                              )
              Defendants.     )

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendants' Robert E.
Ferguson, Robert D. Graham, Christian M. Milton, and Elizabeth A.
Monrad's (collectively "Defendants") Motions to Transfer Venue to
the District Court of Connecticut, under Federal Rule of Criminal
Procedure 21(b).  (Docket Nos. 25, 28, 32, and 35.)  This is a
criminal securities fraud case.[1]  The government alleges that
Defendants conspired to defraud investors through fraudulent
insurance transactions involving American International Group,
Inc. ("AIG"), General Reinsurance ("GenRe"), and other related
entities.[2]  The issue before the Court is whether the Court

---

[1] Defendants were indicted on: Conspiracy to Violate the Federal
Securities Laws and Commit Mail and Wire Fraud, in violation of 18 U.S.C. §
371 (Count I); Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff
(Counts II - V); Making False Statements to the Securities and Exchange
Commission, in violation of 15 U.S.C. §§ 78m(a) and 78ff (Count VI); Wire
Fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Counts VIII - XI); Mail
Fraud, in violation of 18 U.S.C. §§ 1341 and 1346 (Counts XII - XIII).

[2] The government concedes that the related entities were nominal parties
to the fraudulent transactions.  (Gov't's Br., at 2 n.1.)  Those entities
include: Cologne Re Dublin (CRD), a subsidiary of Berkshire-Hathaway, and
National Union Fire and Insurance Company of Pittsburgh, a subsidiary of AIG.

should grant Defendants' Motion to Transfer Venue to the United

States District Court of Connecticut because the bulk of the

witnesses and defendants reside in Connecticut and New York;

seventy-eight (78) of the overt acts in the Indictment occurred

in Connecticut and New York; and that the interests of justice,

the convenience of the parties, the witnesses, and counsel

requires transfer to Connecticut.  The Court grants Defendants'

Motion to Transfer Venue to the United States District Court of

Connecticut because Defendants have demonstrated that

adjudicating this matter in this district will result in a

"substantial balance of inconvenience" to the defendants.


### I.  BACKGROUND

This is a criminal securities fraud case.  The government

alleges that Defendants conspired to defraud investors through

fraudulent insurance transactions involving AIG, GenRe, and other

related entities.  In January 2005, the government investigated

what it called a "massive" accounting fraud which led to the

collapse of a Richmond, Virginia-based insurance company.

(Gov't's Br. at, 2.)  The government maintains that Federal

Bureau of Investigation ("FBI") agents from Richmond, Virginia

learned of allegedly fraudulent insurance transactions involving

AIG[3] and GenRe.[4]   (Gov't's Br., at 2.)   After the FBI agents in Richmond, Virginia learned of the allegedly fraudulent transactions, the United States Postal Inspection Service ("USPIS"), Washington Division Field Office, assumed primary responsibility of the investigation.   (Gov't's Br., at 2.)

The USPIS investigation uncovered that Defendants and their coconspirators had allegedly agreed to help AIG misled shareholders, investors, and analysts in AIG's public financial statements and earnings reports.  (Indictment ¶ 32.)  The government alleges that Defendants caused AIG to disseminate its false financial statements to shareholders, including Hampton University and Kanawha Capital, both Virginia entities. (Indictment ¶ 33-73.)  The government further alleges that AIG electronically sent false documents to the Securities and Exchange Commission's ("SEC") EDGAR website for public disclosure.  (Indictment ¶¶ ggg, jjj, vvv, yyy, and zzz.)  The government has stated that the United States Securities and Exchange Commission has located their computer server which hosts the EDGAR website in Alexandria, Virginia.

---

[3] AIG is a Delaware corporation with its principal place of business in New York, New York.  (Indictment ¶ 1.)  AIG's stock is publicly traded on the New York Stock Exchange.  (*Id.*)

[4] GenRe is a Connecticut-based company and a subsidiary of Berkshire Hathaway, Incorporated, a publicly traded stock.  (Indictment ¶ 2.)

As a result of the USPIS investigation, two (2) of Defendants' alleged coconspirators pled guilty to conspiracy to commit securities fraud in the Eastern District of Virginia.  On June 9, 2005, John Houldsworth pled guilty before Judge Claude M. Hilton, and on June 10, 2005, Richard Napier pled guilty before Judge James Cacheris.  (Gov't's Br., at 2.)  The United States Probation Office for the Eastern District of Virginia has prepared Presentence Investigation Reports for Mr. Houldsworth and Mr. Napier, and both are awaiting sentencing.  (Gov't's Br., at 2.)

On February 16, 2006, Defendants were arraigned before this Court for their roles stemming from the same alleged conspiracy. The trial date set for this matter is May 22, 2006.  Defendants now move the Court to transfer this case to the United States District Court in Connecticut.

## II. DISCUSSION

### A. Standard of Review

Upon a defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.  FED. R. CRIM. P. 21(b).  The decision whether to transfer a case is committed to the sound discretion of the district court.  *See United States v. Heaps*, 39 F.3d 479, 482 (4th Cir. 1994) (citing *United States v. Espinoza*,

4

641 F.2d 153, 162 (4th Cir. 1981), *cert. denied*, 454 U.S. 841

(1981).

> To warrant a transfer from the district where an
> indictment was properly returned it should appear that a
> trial there would be so unduly burdensome that fairness
> requires the transfer to another district of proper venue
> where a trial would be less burdensome; and, necessarily,
> any such determination must take into account any
> countervailing considerations which may militate against
> removal.

*United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157

(S.D.N.Y. 1964).  On appeal, the district court may only be

reversed if it has abused its discretion.  *Heaps*, 39 F.3d at 482.


## B. Analysis

The Court grants Defendants' Motion to Transfer Venue to the

United States District Court of Connecticut because Defendants

have demonstrated that having this matter adjudicated in this

district will result in a "substantial balance of inconvenience"

to the defendants.  For a defendant to succeed on a Motion to

Transfer Venue under Federal Rule of Criminal Procedure 21(b),

the defendant must demonstrate that prosecution of the case in

the district where the count was properly filed would "result in

a substantial balance of inconvenience" to the defendant.  *United

States v. Hurwitz*, 573 F. Supp. 547, 552 (S.D. W. Va. 1983)

(citing *United States v. Baltimore & Ohio R.R. Co.*, 538 F. Supp.

200, 205 (D.D.C. 1982) (quoting *United States v. Jones*, 43 F.R.D.

511, 514 (D.D.C. 1967)).  In considering the inconvenience to the

defendant, the court may weigh the:

    (a)   location of the defendant;
    (b)   location of witnesses;
    (c)   location of events likely to be in issue;
    (d)   location of documents and records;
    (e)   disruption of the defendant's business;
    (f)   expense to the parties;
    (g)   location of counsel;
    (h)   relative accessibility of place of trial;
    (I)   docket conditions in each district; and
    (j)   any other specific element which might affect the transfer.

*Heaps*, 39 F.3d at 483 (citing *Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240, 243-44 (1964)); *United States v. Smallwood,* 293 F. Supp. 2d 631, 640 (E.D. Va. 2003).  In weighing these factors here, the Court finds that Defendants have demonstrated that adjudicating this matter in this district will result in a "substantial balance of inconvenience" to the defendants.

**a.   Location of the defendants**

The Court finds that Defendants have shown that adjudicating this case in the Eastern District of Virginia will result in a "substantial balance of inconvenience" because three (3) out of the four (4) Defendants reside closer to the Connecticut courthouse than to the Alexandria courthouse.  The Supreme Court has held that criminal defendants have no right, Constitutional or otherwise, to be tried in their home district.  *Platt*, 376 U.S. at 245 ("Art. III, [§] 2, of the Constitution provides that 'The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . .'").  "The

provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place."  *Id.*

However, the Fourth Circuit has held that a defendant should be tried in a court close to where the defendant lives.  *See, e.g., United States v. Lenihan,* 19 F.3d 1430, 1994 WL 102149, at *4 (4th Cir. March 29, 1994) (unpublished).  *See also United States v. Lima*, No. 34 CR 800, 1995 WL 348105, at *3 (N.D. Ill. June 1, 1995) (unpublished) (transferring venue because the proposed venue "would cause less disruption of his family life."); *United States v. Russell*, 582 F. Supp. 600, 662 (S.D.N.Y. 1984) (reasoning that "wherever possible, defendants should be tried where they reside").  "To the extent that there is a 'policy' favoring the trial of defendants where they reside [and] this 'policy' is in tension with the more general presumption that 'a criminal prosecution should be retained in the original district,'" the matter should remain in the original district unless the interests of justice require transfer.  *See United States v. Spy Factory*, *Inc.,* 951 F. Supp. 450, 464 (S.D.N.Y. 1997); *see also Espinoza*, 641 F.2d at 162 (denying a defendant's motion to transfer venue based on the contention that he had the right to be tried in the jurisdiction of his residence).  The Court finds that the interests of justice require transfer in this case.

### *Mr. Ferguson*

Defendants assert that Mr. Ferguson "has lived and worked in Connecticut for thirty-four years." (Def.'s Mot., at 7.) However, the government argues that on the day of the arraignment Mr. Ferguson advised the United States Probation Office ("USPO") that he currently resides in Florida. (Gov't's Br., at 7.)   The government further argues that, since the arraignment, Mr. Ferguson has been supervised by a USPO officer in Fort Meyers, Florida.   (*Id.*)   Additionally, the government notes that Mr. Ferguson has indicated that he intends to stay in Florida through April 29, 2006.   (*See* Gov't's Ex. A, United States Postal Service, Inspection Service Inquiry.)   Thus, the government asks that, for the purpose of this motion, the Court presume that Mr. Ferguson resides in Florida, which would undermine Mr. Ferguson's claim that defending himself in this district is a substantial inconvenience or injustice because the Alexandria courthouse is closer to his Florida residence than the Connecticut courthouse.

The Court disagrees because all the evidence points to the fact that Mr. Ferguson resides in Connecticut, not Florida.   Mr. Ferguson has lived and worked in Connecticut for thirty-four (34) years.   (Def.'s Br., at 7.)   His wife, their two (2) children, and their six (6) grandchildren live in Connecticut.   (*Id.*)   Mr. Ferguson is active in a local church and regularly attends weekly services in Connecticut.   (*Id.*)   Additionally, Defendants explain that Mr. Ferguson is currently on vacation in Florida and is not a resident of Florida.   (Def.'s Reply Br., at 6-7.)   Therefore,

the Court finds that for the purposes of this motion, Mr.
Ferguson resides in Connecticut and thus is closer to the
Connecticut courthouse.

### Mr. Graham

The government concedes that Mr. Graham resides in Westport,
Connecticut, and therefore the Connecticut courthouse is more
convenient for him.  (Gov't's Br., at 8.)

### Ms. Monrad

The government concedes that Ms. Monrad resides in Westport,
Connecticut, and therefore the Connecticut courthouse is more
convenient for her.  (Gov't's Br., at 8.)

### Mr. Milton

Mr. Milton resides in Wynnewood, Pennsylvania, a suburb of
Philadelphia.  Wynnewood is approximately 217 miles from Hartford
Connecticut (4 hours and 7 minutes), 180 miles from New Haven
Connecticut (3 hours and 30 minutes), but only 145 miles from
Alexandria, Virginia (2 hours and 45 minuets).[5]  As such, the
Court finds that Mr. Milton cannot claim that defending himself
in this district is a substantial inconvenience or injustice
because the Alexandria courthouse is closer to his residence than
the Connecticut courthouses.

---

[5] The Court notes that the distance and drive times were generated by
Mapquest, http://www.mapquest.com. (last visited April 3, 2006).

Therefore, the Court finds that Defendants have shown that adjudicating this case in the Eastern District of Virginia will result in a "substantial balance of inconvenience" because three (3) out of the four (4) Defendants reside closer to the Connecticut courthouse than to the Alexandria courthouse.

**b.   Location of witnesses**

The Court finds that Defendants have shown that the location of potential witnesses will result in a "substantial balance of inconvenience" because most of the substantive witnesses who have personal knowledge of the facts of this case reside in the New York and Connecticut area.  Location of witnesses is "one of the more significant factors in the" decision to transfer venue under Rule 21(b).  *United States v. Daewoo Indus. Co., Ltd.*, 591 F. Supp. 157, 160 (D. Or. 1984)(citing 8 J. Moore, *Moore's Federal Practice,* ¶¶ 21.04(2)(b)(I) (2d ed. 1983)).  The government's Indictment alleges that seventy-eight (78) overt acts occurred in New York and Connecticut.  The Defense has identified approximately thirty (30) witnesses who reside in the New York and Connecticut area.  The government investigators and lawyers reside in the Washington Metropolitan area.  The government admits that no Defendant entered Virginia or directly sent any materials to Virginia investors after AIG sent materials into Virginia to the SEC.  AIG was required by law to file reports with the SEC. _

Here, Defendants identify, by title, nine (9) witnesses who they believed would be called to testify at trial, including both GenRe's and AIG's attorneys, auditors, and accountants. All of these potential key witnesses are residents of Connecticut or the New York Metropolitan area. (Gov't's Br., at 9.) Defendants represent to the Court that after a review of the documents produced by the government pursuant to Federal Rule of Criminal Procedure 16, they found no potential witnesses who live or work in Virginia and approximately thirty (30) witnesses who live or work in Connecticut. (Def.'s Reply Br., at 8, and Def.'s Ex. A attached thereto.) The Court finds that because the government listed these thirty (30) potential witnesses in its case-in-chief, Defendants need not establish the materiality of these witnesses. Moreover, the Court finds the fact that the vast majority of Defendants' character witnesses reside in Connecticut weighs in favor of transfer. *United States v. Martino*, No. S1 00 CR 389, 2000 WL 1843233, at *5 (S.D.N.Y Dec. 14, 2000) (unpublished); *see also United States v. Ohran*, No. 99 CR 142, 2000 WL 620217, at *3 (unpublished) (granting transfer because the impact of character witnesses would be greater in the jurisdiction where they reside).

Attempting to shift balance of inconvenience in their favor, the government argues that many of the government and defense witnesses are located in Washington, D.C. and Virginia. First, USPIS inspectors, who conducted a majority of the interviews in this case, and are themselves potential witnesses, are located in

the Washington, D.C. Metropolitan area.[6]  Second, FBI Special
Agents, who conducted interviews are located in the Richmond,
Virginia area.[7]  Third, Securities and Exchange Commission
("SEC") witnesses and SEC's EDGAR Management Office of
Information and Technology witnesses, who are potential
witnesses, are located in the Washington, D.C. area.  Fourth, the
alleged victims, Hampton University and Kanawha Capital
Management are both located in Virginia.  However, when pressed
at oral argument to name which of these witnesses had personal
knowledge of the events at issue here, the government conceded
that none of them had personal knowledge.  Instead the government
stated that these witnesses were merely investigators who
interviewed potential witnesses with personal knowledge.

   In light of the foregoing, the Court finds that Defendants
have shown that the location of potential witnesses will result
in a "substantial balance of inconvenience" because a significant
number of key witnesses are located in the New York and
Connecticut area and not in the Eastern District of Virginia.

---

   [6] These USPIS inspectors include: James Tendick, Dale Kamps, Dave
Hodapp, Dominic Pinto, Pamela Cichon, David Cyr, Charles Willets, Brian Evans,
Jim Walsh, and Judy Ramos.  (Govt.'s Br., at 12.)

   [7] These FBI Special Agents include Ira Steele, Dave Hulser, and Ryan
Meeser.  (Govt.'s Br., at 12.)

### c.   Location of events likely to be in issue

The Court finds that Defendants have shown a "substantial balance of inconvenience" in having this matter adjudicated in the Eastern District of Virginia because the majority of events at issue took place in Connecticut and New York, and not in the Eastern District of Virginia.  Where "it seems clear that the great majority of the events and transactions" that will be at issue at trial concern the defendant's business transactions and creation of financial reports that occurred in another jurisdiction, transfer is appropriate.  *United States v. Clark*, 360 F. Supp. 936, 943 (S.D.N.Y. 1973).

The government argues that in cases involving securities fraud, the location of the business transactions and the creation of financial reports should not weigh in favor of the defendant or the government because the crimes are national in scope.  *Guastella*, 90 F. Supp. 2d at 339 (holding that "the location of the events at issue favor[ed] neither side," despite the fact that the defendants initiated and primarily conducted their investment fraud scheme from Nevada, "because the criminal activity that was alleged to have occurred in this case was national and even international in scope, and had ties to both New York and Las Vegas"); *see also Spy Factory*, 951 F. Supp. at 457 ("Because the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side.").[8]

---

[8] Defendants rely on *United States v. Benjamin*, 623 F. Supp. 1204, 1215 (D.D.C. 1985), to support their argument that transfer is appropriate. (Def.'s Br., at 11.)  The Court distinguishes *Benjamin* from the case here

However, the government concedes that the crux of criminal activity alleged here occurred in Connecticut, New York, Dublin, Ireland, and Cologne, Germany. (Gov't's Br., at 14.) Moreover, of the seventy-eight (78) overt acts alleged in the Indictment, only seven (7) of the acts have anything to do with Virginia. The Virginia overt acts include, AIG's sending false financial data to the SEC that was transmitted and electronically posted on the SEC EDGAR website, which is stored on a computer server in Alexandria, Virginia, (Indictment ¶ ggg, jjj, vvv, yyy, and zzz) and AIG's mailing several annual reports to Hampton University and Kanawha Capital Management, both Virginia entities. (Indictment at Counts 8-11 and 12-13; and Indictment ¶¶ 11, 10, 31(b) (referring to reports and documents that AIG was required to file with the SEC).)  The Court notes that the SEC's EDGAR server is located in Alexandria Virginia in the Eastern District of Virginia.  However, if this connection is all that is necessary to bring a securities fraud action in the Eastern District of Virginia, every criminal securities fraud case involving the filing of SEC documents, could be brought in this district.  Allowing such a result would mean that every publicly traded company, both nationally and internationally, who files its financial statements with the SEC could be hauled in to court this district, no matter where the majority of underlying criminal or tortuous acts were committed.  The Court finds that

---

because there, the court transferred the case because the tax fraud charges at issue cross referenced to an independent "automatic transfer" provision in the United States Code.  *Id.* at 1206.  The court stated that "Congress has indicated a strong preference for the trial of such [tax fraud] cases at the defendant's home."  *Id.* at 1215.  Here, the allegations involve security fraud and thus, *Benjamin* is not controlling.

basing venue on the fact that the SEC's EDGAR server happens to be in this district is insufficient.  There must be a greater connection with this district, especially in this case where the majority of the alleged criminal activity took place in Connecticut and New York.  The victims of this alleged fraud are found in all fifty states according to the government.

Additionally, the Court finds that this case is analogous to *United States v. Donato*, 866 F. Supp. 288, 294 (W.D. Va. 1994). In *Donato*, the defendants were indicted in the Western District of Virginia and charged with conspiracy to defraud a Texas-based insurance company.  "The [d]efendants hatched their alleged scheme, carried it out, and were arrested in the Washington metropolitan area."  *Id.*  The *Donato* Court transferred the case to the district where a defendant resided because it found that "the only overt act committed by the conspiracy touching upon th[at] district [was a] phone call from Defendant . . . , presumably made from . . . Virginia[,]" and that connection was too remote to remain in that district.  *Id.*  The *Donato* Court specifically noted that "[t]he insurance company victimized by the Defendants' alleged fraud is based in Texas" and not in that district.  *Id.*

Here, like in *Donato*, the alleged fraudulent activity by the Defendants was hatched and carried out in another jurisdiction. The government concedes that the crux of criminal activity alleged here occurred in Connecticut, New York, Dublin, Ireland, and Cologne, Germany.  (Gov't's  Br., at 14.)  Moreover, of the seventy-eight (78) overt acts, only seven (7) of them have

15

anything to do with Virginia.  Those acts include, but are not limited to, Defendants alleged use of the SEC's EDGAR filing system (Indictment ¶ ggg, jjj, vvv, yyy, and zzz) and mailing several annual reports to Hampton University and Kanawha Capital Management, both Virginia entities.  (Indictment at Counts 8-11 and 12-13.)[9]   Therefore, the Court finds that Defendants have shown a "substantial balance of inconvenience" in having this matter adjudicated in the Eastern District of Virginia because the majority of events at issue took place in Connecticut and New York, and not in the Eastern District of Virginia.

### d.    Location of documents and records

The Court finds that Defendants have failed to show that the location of documents and records will result in a "substantial balance of inconvenience" because copies of the vast majority of documents and audiotapes have already been produced to the defendants.  Although Defendants concede that "many documents [at issue] will have been produced prior to trial," Defendants claim that "no [D]efendant can fully anticipate what evidence or testimony the government might offer and what other documents might be needed to rebut or impeach the government's witness." (Def.'s Br., at 13.)  The Court recognizes that in most cases with multiple defendants, no party can anticipate what other

---

[9] Moreover, although the government has selected these filings as key events in the case, the Court notes that the SEC investigated this transaction out of its Northeast Regional Office in New York City and sued certain individuals in the Southern District of New York.  Likewise, the New York Attorney General and Superintendent of Insurance brought related actions against AIG and its former executives in New York.

documents might be needed during trial.  Here, however, most documents have already been produced to Defendants and the likelihood of a large influx of additional documents is remote. Additionally, the Court notes that most of the audiotapes and documents have been provided to Defendants in searchable format. (Gov't's Br., at 17.)  Therefore, the Court finds that Defendants have failed to show that the location of documents and records will result in a "substantial balance of inconvenience" because copies of the vast majority of documents and audiotapes have already been produced to Defendants.  However, in weighing all of the *Platt* factors, the Court finds that justice demands this case be transferred to the United States District Court of Connecticut.

### e.   Disruption of the defendants' business

The Court finds that adjudicating this case in Virginia will not disrupt the Defendants' business because Defendants concede that "Mr. Ferguson is retired, Ms. Monrad is now a private investor, Mr. Graham has his own consulting business based in Connecticut, and Mr. Milton is employed by a company in New York City." (Def.'s Br., at 6 n.4.)  Therefore, the Court finds that there is no "substantial balance of inconvenience" caused to defendants' business.  However, in weighing all of the *Platt* factors, the Court finds that justice demands this case be transferred to the United States District Court of Connecticut.

**f.   Expense to the parties**

The Court finds that the expense to Defendants will result in a "substantial balance of inconvenience" because Defendants will be forced to absorb significant out-of-pocket costs for both travel and hotel accommodations during trial.  Travel and lodging expenses are an obvious factor to be considered in determining the balance of inconvenience to the parties, *see United States v. Haley,* 504 F. Supp. 1124, 1128-29 (E.D. Pa. 1981), albeit not controlling, unless unbearable.  *See Baltimore & Ohio R.R. Co.,* 538 F. Supp. at 205.  Courts considering this factor are not to focus on the size of an expense that the defendants may incur, but rather, on their ability to pay.   *See Haley*, 504 F. Supp. at 1129, n.32.  The government argues that because Defendants are all former high-level executives of two (2) of the world's largest insurance companies and are men and women of considerable financial means a "sixteen-day trial in Alexandria should not present serious financial difficulties" for them.  (Gov't's Br., at 18.)  In contrast, the government argues that "a trial in Connecticut will impose significant burdens on the government." (*Id.*)

The Court disagrees because "[t]he United States of America has, for all practical purposes, unlimited financial resources to bring to bear.  Unlike the [defendants], the Government can, and does, mint money." *Coffee*, 113 F. Supp. at 757.  It is true that Defendants are people of significant financial means, however, when compared to that of the government's resources, they pale in comparison.  Here, the government is in a better position to bear

the additional expense of trying the case in Connecticut.  *See*
*United States v. Martino*, No. S1 CR 389, 2000 WL 1843233, *7
(S.D.N.Y. December 14, 2000) (unpublished) (finding that "the
government is in a better position to bear such an expense").
Accordingly, this factor weighs in favor of Defendants.
Therefore, the Court finds that Defendants have shown that
expense to Defendants will result in a "substantial balance of
inconvenience" because Defendants will be forced to absorb
significant out-of-pocket costs for both travel and hotel
accommodations during trial.


      **g.   Location of counsel**

    The Court finds that Defendants have not shown that the
location of counsel will result in a "substantial balance of
inconvenience" because lead counsel for two (2) of the defendants
are located in Washington, D.C., lead counsel for the remaining
two (2) defendants are located in New York, and counsel for the
government is located in Virginia.  The Alexandria courthouse is
only five (5) miles away from a major metropolitan airport,
Washington Reagan National Airport ("DCA").  DCA serves twelve
(12) airlines, has nonstop services to over seventy (70)
destinations, and serviced 17.8 million passengers last year.
*See* About Reagan National Airport, Metropolitan Washington
Airports Authority, at http://www.metwashairports.com/reagan/
about_reagan_national/ about_reagan_national_2 (last visited
April 3, 2006).  Additionally, several airlines provide daily
flights with service up and down the northeast corridor,

including New York and Connecticut.  Therefore, the Court finds
that Defendants have failed to show that the location of counsel
will result in a "substantial balance of inconvenience" because
lead counsel for two of the defendants are located in Washington,
D.C., lead counsel for the remaining two defendants are located
in New York, and counsel for the government is located in
Virginia.  However, in weighing all of the *Platt* factors, the
Court finds that justice demands this case be transferred to the
United States District Court of Connecticut.


### h.    Relative accessibility of place of trial

The Court finds that Defendants have shown a "substantial
balance of inconvenience" in adjudicating this matter in this
district because the Connecticut courthouses are more accessible
to the defendants, the percipient witnesses, and most of the
defense, and some of the government agents.  *See Hurwitz*, 573 F.
Supp. at 554 (holding that courts should be "[m]indful of the
location of witnesses and counsel" in weighing the relative
accessibility of the place of trial).


### i.    Docket conditions in each district

The Court finds that Defendants have shown a "substantial
balance of inconvenience" in adjudicating this matter in this
district because significantly fewer cases are filed per judge in
Connecticut than in this district, and therefore adjudicating the
case in Connecticut will not likely result in the unnecessary

delay of the trial and the expenditure of significant, yet
avoidable, costs.  "Courts must be mindful of . . . the actual
expense and waste of court time in our severely burdened and
overtaxed federal judicial system" in analyzing a Rule 21(b)
motion.  *United States v. Zylstra*, 713 F.2d 1332, 1336 (7th Cir.
1983).  *See also United states v. Bloom*, 78 F.R.D. 591, 609-10
(E.D. Pa. 1977) (considering judicial economy in denying a motion
to transfer).

Here, the Court has set a firm date of May 22, 2006, for
trial.  In the Eastern District of Virginia, known as the "Rocket
Docket,"[10] and the median time from the filing of a criminal case
to its disposition by trial is 7.1 months, this is no fleeting
occrence.  (*See* Gov't's Ex. E, *Judicial Business of the U.S.
Courts, 2004 Annual Report of the Director, Table D-6 (U.S.
Courts - Median Time Intervals from Filing to Disposition of
Criminal Defendants*).)  In contrast, the median time from filing
a criminal case to disposition at trial in Connecticut is 21.1
months.  However, this statistic is misleading.  Last year the
Eastern District of Virginia received 5,837 filings, which
equates to 531 filings per judge.  *See United States District
Court - Judicial Caseload Profile*, *available at*
http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited April

---

[10] The Eastern District of Virginia has been referred to as the "Rocket
Docket" since Judge Walter E. Hoffman, in 1954, pursued a 12-year regiment of
putting in long hours, cutting the traditional 2-hour lunch, and holding court
on Saturdays and holidays.  *See* Emilee Hines, *The "Rocket Docket" Judge Bans
Continuances*, Lawyers Monthly, May 1989, at 8.  Judge Hoffman also initiated the
practice in this district of fining lawyers who were late and establishing
"firm trial dates."  *Id.*  Hoffman was quoted as saying that "[t]he lawyers for
both sides know there will be no continuances", and that in this district
"continuance" is an obscene word.  *Id.*

3, 2006).  During that same period, the District of Connecticut only had 2,530 filings, which equates to only 317 filings per judge.  Therefore, there are significantly fewer filings per judge in Connecticut than in the Eastern District of Virginia.

Additionally, although the docket condition is a factor for the Court to consider, "the Speedy Trial Act assumes that either [fora] would rearrange its docket to accommodate [a] significant case]." *Benjamin*, 623 F. Supp. at 1215.  Thus, transferring the case to Connecticut will not likely result in increased costs or frustrate judicial economy.

The Government has made a compelling argument that this Court can bring this matter to trial sooner than Connecticut under current docket conditions and that may be true.  However, the only reason this court's docket can remain current is if the Court continues to be vigilant in maintaining the docket and attentive to forum shopping by litigants.

We have observed in the civil context that this court has been targeted for certain types of cases because of favorable docket conditions. For example, we receive a number of patent case filings.  We have learned that many civil patent attorneys conduct seminars where they discuss ways to bring a patent case in this district because the cases can be heard here rapidly. The United States Patent and Trademark Office is directly across the street from our courthouse.  While bringing a case in this court is welcome, this court cannot and will not be able to remain current if the litigants can bring cases into this court that have only a scant connection with Virginia. We must be wary

that the "locusts" do not descend upon us.


The United States Securities and Exchange Commission's decision to locate EDGAR, the electronic filing system and to host the SEC website on a computer server in Alexandria, Virginia will not in and of itself transform the Eastern District of Virginia into the exclusive jurisdiction for criminal securities fraud cases.  The hosting of an electronic impulse, without more, will not result in preferred venue in this district. A computer server is a compact device that can be located in any state.

The Administrative Office of Court's Annual Report does not reveal the complex nature of the cases heard in this district. This Court has a heavy court calendar of federal death penalty, terrorism, espionage, and complex international drug cases.  The Eastern District of Virginia has had a high volume of federal death penalty trials.  This mix of complex litigation consumes a significant amount of finite judicial resources.  These facts must be weighed by the Court in considering docket conditions as well.

The Court finds that Defendants have shown a "substantial balance of inconvenience" in adjudicating this matter in this district because the filings per judge in Connecticut is significantly less than in this district, and adjudicating the case in Connecticut where the bulk of the transactions occurred and witnesses reside will not likely result in the unnecessary delay of the trial and the expenditure of significant, yet avoidable, costs.

**j.   Any other specific element which might affect the transfer**

The Court transfers this case to the United States District Court of Connecticut because although Defendants' alleged coconspirators have been successfully prosecuted in this district, allowing the case to proceed in United States District Court of Connecticut is consistent with the interests of justice and judicial economy.  The government argues that where coconspirators have been prosecuted in the charging district "it is reasonable for the government to conserve resources by trying the remaining co-conspirators in the same district." *Smallwood*, 293 F. Supp. 2d at 640; *Donato*, 866 F. Supp. at 294 (denying venue transfer in order to allow a case to proceed "in a unified fashion").  Generally, "the interests of justice and judicial economy [are] enhanced by trying all defendants in the same" district.  *United States v. Smith*, 412 F. Supp. 1, 4 (S.D.N.Y. 1976).

Here, on June 9, 2005, John Houldsworth pled guilty before Judge Claude M. Hilton and on June 10, 2005, Richard Napier pled guilty before Judge James Cacheris.  (Gov't's Br., at 2.)  The United States Probation Office for the Eastern District of Virginia has prepared Presentence Investigation Reports for Mr. Houldsworth and Mr. Napier and both are awaiting sentencing. (Gov't's Br., at 2.)  The Court notes that the United States Probation Office for the Eastern District of Virginia has invested considerable time and resources in investigating and learning about this case.  However, the Court disagrees with the

government that duplicating these efforts in Connecticut would waste limited judicial resources and possibly result in disparate sentences.  The government have not argued that the Connecticut courts do not have the time or resources to investigate or learn this case.  Concerning the possibility of disparate sentences among alleged coconspirators, the Court notes that the government has the ability to ask the court in Connecticut to take judicial notice of the alleged coconspirator's sentences in this district. Therefore, the Court transfers this case to the United States District Court of Connecticut because although Defendants' alleged coconspirators have been successfully prosecuted in this district, allowing the case to proceed in United States District Court of Connecticut is consistent with the interests of justice and judicial economy.

## III.  CONCLUSION

The Court grants Defendants' Motion to Transfer Venue to the United States District Court of Connecticut because Defendants have demonstrated that having this matter adjudicated in this district will result in a "substantial balance of inconvenience" to the defendants.

For the abovementioned reasons, it is hereby

ORDERED that Defendants Robert E. Ferguson, Robert D. Graham, Christian M. Milton, and Elizabeth A. Monrad's Motion to Transfer Venue to the United States District Court of Connecticut, under FED. R. CRIM. P. 21(b) is GRANTED.  It is further

ORDERED that this case and all unresolved matters before this Court relating to this case shall be transferred immediately to the United States District Court of Connecticut.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___10____ day of April, 2006.


_____/s/_____
Gerald Bruce Lee
United States District Judge


Alexandria, Virginia
04/10/06